Case No. 18 at 6298 Woodhull Freedom Foundation et al. appellate v. United States of America et al. Mr. Cormier, the appellate, will present the application. Mr. Smith, on behalf of the Court, we want to thank you for your assistance. Thank you, Mr. Cormier. Good morning. Good morning, Your Honor. May it please the Court. This Court should reverse the decision below denying standing for three reasons. First, the District Court failed to apply the correct standard for evaluating standing in the context of a pre-enforcement challenge to a law that criminalizes speech. Second, FOSTA's widespread chilling effects, and in particular, appellants' reasonable fear of prosecution of the prospect of civil liability, provide proper bases for standing under the relevant standard. And third, the District Court and the Department of Justice simply misconstrued the law. To begin with, the District Court ignored First Amendment standing doctrine. This Court has made clear in numerous cases that more forgiving rules apply in the context of First Amendment cases. Now, rather than apply these rules, the District Court relied on cases like Navigar v. United States and Siegers v. Gonzales. Mr. Cormier, FOSTA has been on the books for over a year now. Isn't that right? It has. Are you aware of any prosecutions for violation of 2421A? I'm not aware of any prosecutions for violating 2421A. How about any real-life examples of suits being brought after the amendment of 230? Well, right at the same time that FOSTA was adopted, the Justice Department indicted the operators and former owners of Backpage.com, which the Justice Department continues to say was the primary target of FOSTA. So they've been busy with that prosecution over the last year. But there have been none others? No prosecutions under FOSTA. There have been, however, civil litigants that have been taking advantage of the amendments which removed immunities from Section 230 of the Communications Decency Act. So at least a couple of cases in Texas. One of them is mentioned in the amicus filing of 464, page 8 of that amicus brief. But whether or not there have been prosecutions isn't the relevant standard for the purposes of standing in a First Amendment context. Whether or not there has been even the threat of prosecution or an actual prosecution isn't determinative of whether or not standing exists. There has to be a credible threat of enforcement, right? That's right. There has to be a reasonable concern. And in every other case involving Internet regulations, Internet speech regulations, courts have uniformly found that fear. And the question isn't whether or not the government believes that the concerns are unrealistic or hyperbolic, as they claim to here. In any of those cases, if the terms of the statute can be applied and it's not an unreasonable interpretation, then the court should rely on the interpretation of the plaintiff to the extent that it's reasonable. So in the case of the Communications Decency Act back in the 90s, the government made the same argument that it's unreasonable to think that the Carnegie Library or Critical Path AIDS Project or Stop Prisoner Rape could be targets of prosecutions under the Communications Decency Act. Nevertheless, the Eastern District of Pennsylvania found that there was standing to go ahead because of the concern, because of the chilling effects. The same was true with the Child Online Protection Act that was adopted in the wake of the CDA. Once again, the government made the argument that concerns about prosecution were unrealistic. And in fact, in every case involving these kinds of wide-scale Internet speech regulations, standing has been found. But FOSTA, while it's in the same mold as those regulations, in many ways is worse. FOSTA's sole purpose is to... Now, for 2421, let's just take 2421 for example. You only need to find one plaintiff who has standing, I recognize. That's correct. But who's got the strongest standing arguments in 2421 in your view? Well, I think... Who's got the weakest? I certainly think that What Whole Freedom Foundation has a good case for standing under that because they have the intention to facilitate sex work by making it safer, by doing harm reduction, by providing educational programs. The same is true for Alex Andrews, who has been a long-time advocate for sex workers and had to forego the opportunity to provide a mobile app that would allow sex workers to report violence, harassment, or other forms of abuse. Human Rights Watch, who does work on behalf of sex workers, including advocating decriminalization, and has done reports on police abuse towards sex workers. Would they say that they have an intent to facilitate prosecution? Well, yes. Well, they have an intention to facilitate. But the question is whether or not an intention to facilitate is criminal speech. The question is whether or not it crosses the line from actually participating in the criminality, which is what is required for the speech integral to criminal conduct exception to the First Amendment, and advocacy that can be the target or is chilled by the government's efforts and by this legislation. But let me ask you by analogy, there are lots of articles that are written about how our drug laws are too severe, the mandatory minimums, those types of things, and yet there's never been any suggestion that the government would bring a prosecution. I'm sorry. There's never been any suggestion, for example, that the prosecution would bring an action against someone who's writing that type of article, even though the article is saying, you know, urging Congress to amend the statute, pointing out all the horrors that happen under the current statute. Well, it's interesting you should mention that, Your Honor, because one of the positions that the Justice Department took in front of the district court is that efforts to make drug use safer or to do harm reduction efforts with drug use would never be the subject of prosecution under drug laws. As a matter of fact, at the hearing in front of Judge Leon, and this appears at page 275 of the appendix, the Justice Department said no one in their right mind would say that safe needle programs, needle exchange programs or injection programs could be the subject of threats by the Justice Department. But after, in our supplemental brief, we gave examples of just those kinds of threats and those kinds of programs and harm reduction programs, we didn't see a word about that kind of harm reduction or that kind of analogy to these kinds of laws in the government's briefs to this court. Indicating that these needle exchange programs have been sued? Are you saying that they have been sued? They have been threatened by the U.S. Attorney in the District of Vermont, among others. That's one of the examples that we give. We also give the example of Human Rights Watch on their behalf of sex workers where they have done reports on police abuse and where workers who try and distribute condoms to keep sex workers safer have been threatened by police. So it's that kind of thing that can happen under this law. As a matter of fact, one of the things, too, that makes this law different from the other examples that we provided is that you can have a law that the Justice Department might enforce. This isn't limited to just the Justice Department. It's one of the ways in which FOSTA is so much worse than the other examples from the standpoint of both the threat to speech and the reasons for standing than the other examples of Internet speech regulations. This can be enforced not by the Justice Department, but by state prosecutors, local prosecutors. State Attorney General's offices can bring parents patriotic actions. The entire thrust and the entire purpose of this law was to make speech in this area more subject to these kinds of actions and to create more draconian penalties. As a matter of fact, the Supreme Court summed this up in Ashcroft v. Free Speech Coalition, admittedly a different law, where it said this case is a textbook example of why we permit facial challenges to statutes that burden expression. This law directly targets expressive activities and can be enforced by any number of ways. Would it violate the First Amendment for the government to prohibit aiding and abetting criminal acts of prosecution through speech? No, it would not be. So why shouldn't we construe this statute along those lines rather than construe it to be flagrantly unconstitutional by prohibiting advocacy for decriminalization and things of that nature? Because you would have to rewrite the statute to construe it that way. No, we would just have to say that verbs like promote and facilitate mean something like aid and abet. And there are a lot of cases that support that proposition with regard to criminal laws generally on lenity principles. And you would have lenity here reinforced by avoidance. You wouldn't with, again, this brought an enactment. And I think the best analysis of that was in the Ninth Circuit in the case of the United States v. Senator Smith that looked at the Immigration and Nationality Act. And it addressed that precise question whether or not this should be considered aiding and abetting and said that the language of that statute, which is very analogous to this one, cannot be construed with those terms as being limited to speech integral to criminal conduct. For that, it identified three different requirements. Let's focus on this one. You've got the verb promote and the verb facilitate. Yes. Promote prostitution sounds like a concept of pandering. And facilitate, I don't think the brief cited any cases, but we found cases construing the verb facilitate in a criminal statute precisely to mean aiding and abetting. There are also cases we cite in our brief that define facilitate under the Travel Act as anything that would make something easier. Anything that would assist in any way. And that's the way in which when you apply those kinds of regulations to speech, and keep in mind those other laws weren't limited to speech, FOSTA is. And when you apply that kind of language, facilitation, meaning any assistance to speech. But you have those verbs that at least plausibly can be construed narrowly. You have this formulation, the prostitution of another person. I mean, that would be an extremely odd way of getting at advocacy and the prostitution equivalent of needle programs. Well, the prostitution. And you have a specific intent requirement, which I think distinguishes your Ninth Circuit case. Well, no, I don't think the specific intent. You have specific intent here. And the Ninth Circuit case involved reckless disregard of illegality. Well, the Justice Department's position was that it required specific intent. And that's only for 24-21. Keep in mind that there are multiple aspects of FOSTA. And that's just one of them. It happens to be the one that the district court focused on. But the specific intent requirement, I think, is an over-reading of the statute. All we need for standing purposes is for the plaintiff's and the appellant's reading to be plausible, not just the most certain or the most likely interpretation. I understand. And there may well be hard questions about how this statute applies to hypothetical cases. But I have to say, applying this statute to advocacy for decriminalization, to take the low-hanging fruit, that seems to me extremely implausible. And yet that's precisely the kind of activity that the Ninth Circuit and Senator Smith said could be subject to the Immigration and Nationality Act, using those same verbs. I will say that the Justice Department in cases like this tends to do a bait-and-switch. They'll argue when they are defending the law that they're going to be very careful and it's just specific intent and that no one could possibly prosecute anyone other than the very guilty. And yet when it comes to actually applying the law, they're less fastidious about applying specific intent. The current criminal case against the former owners of Backpage.com, for example, at a hearing just last month, the Justice Department was arguing that general intent is enough, that they don't have to have specific knowledge of specific ads and a specific intent to promote prostitution through those ads. The primary way in which the Justice Department has misinterpreted this law is to try and treat this as it's just a regulation of people who are engaged in the business, who are actually doing classified ads and in some way involved in prostitution, whereas the language of FOSTA is written much more broadly and applies to a much wider range of activity than just that. You find 50 references in either the Justice Department's briefs or the briefs supporting Meeke saying that this is a law to go after classified ad sites, but that's not how this law was written and it's allowed to be enforced not just by the Justice Department, but by law enforcement officials at all levels and by civil litigants. And we even see the supporting Meeke, supporting the Justice Department, saying they've already found FOSTA useful in contacting websites and using it essentially as a heckler's vehicle, saying they can persuade people to modify their behavior, to monitor content and to take down certain content because of the hammer that FOSTA provides. And so with all of those different ways of applying FOSTA, it makes it different from any of the other statutes that we're talking about. Roberts. What happens in a case when the text of the statute seems to cover the conduct, but when we apply principles of leniency and avoidance, it doesn't cover? What are we to do then at this stage of the case? Well, at this stage, I think you accept the reasonable arguments of the plaintiffs of what they think the statute can cover so that a court can look at the statute. To disregard principles of leniency and avoidance? I think when it's written this broadly, I don't think that you can do that without rewriting the statute. I see that my time has expired. I reserve the rest of it. And we could focus on the Supreme Court's definition of when the rule of lenity applies. Good morning, and may it please the Court. Courtney Dixon for the United States. Both this Court and the Supreme Court have made clear that even in the First Amendment context, to have standing to bring a pre-enforcement challenge, you have to show a credible threat to prosecution, as Your Honor mentioned. Plaintiffs here have not established that. The district court, in its opinion, went through each of the individual plaintiffs, the allegations that are actually in the complaint, compared it to the text of FOSTA, and explained why plaintiffs simply have not demonstrated that the activity that they are engaged in, as they allege it, could even arguably, let alone plausibly, apply to FOSTA's text cannot apply to the complaint. You don't think that what the Woodhull Foundation does facilitates and promotes prostitution? Your Honor, plaintiffs have written a lot of words out of the statute in describing what Section 2421A does. The statute does not merely say facilitate prostitution. It is owning, operating, or maintaining an interactive computer service with the intent to promote or facilitate the prostitution of another person. If they act as if Congress was going to do that. But how is the prostitution of another person different than prostitution? Your Honor, plaintiffs suggest that Congress was trying to criminalize discussion of prosecution as an abstract concept or general subject matter. But the statute refers to the prostitution of another person, which, as the district court reasoned, is intended to refer to specific acts of prosecution. Excuse me, prostitution. That's a reasonable interpretation, but is it an unreasonable interpretation to say that it's broader than that? I think so, Your Honor. Is that foreclosed by that phrase? I think the most natural reading of the prostitution of another person is as the district court Maybe that's the most natural, but that's not the standard right now. We're just looking for a plausible read. It doesn't need to be the best, right, at this stage. It doesn't need to be the best. Get to the merits, then we're talking about it needs to be the best. But right now, this is a standing inquiry on a motion to dismiss. The First Amendment area. I mean, all the case law tells us this is an area where we tread lightly. Let it proceed unless Even in First Amendment cases, in the pre-enforcement context, Your Honor, this Court has made clear that subjective chill is not sufficient to demonstrate an Article III injury in fact. Complaint of fierce prosecution under a statute that does not apply to their conduct and they do not actually have a reasonable, credible fear of prosecution. They do not have an Article III injury. This Court made similar points. So you're saying, let's just take the Woodhull Foundation. As they look at the language of 2421A, it would be unreasonable for them to think that a prosecutor could believe that they have the intent to promote and facilitate prostitution. Your Honor, as given the activities that they're engaged in, which in fact do facilitate and promote prostitution. I don't know if that's a fair representation of what they've alleged in their complaint, Your Honor. Woodhull alleges that it puts on, for example, a sexual freedom summit every year in which it brings together doctors and therapists and educators to talk about topics that affect sex workers. I think they advocate for the safety and well-being of sex workers. That kind of harm reduction activity is different in a kind from promoting or facilitating any specific act of prosecution. Prostitution, sorry. I hope I don't continue to do that throughout this entire argument. To put it in the words of Senator Blumenthal as he was speaking on the floor, Your Honor, the text of FOSTA was not intended to target harm reduction activity, and the language of the bill makes that clear. It's also clear from the context and legislative history of the statute, Your Honor. Is the Justice Department arguing that we should look at the legislative history of this? Really to the extent that it confirms what the plain text of the statute says, Your But, of course, this law arose in the context of Congress wrote specifically about laws against websites such as Backpage.com that were previously barred by Section 230 of the Communications Decency Act. And, of course, the full text of this law, Your Honor, the full title is the Allow States and Victims to Fight Online Sex Trafficking Act. Congress wrote Section 2421A and amended Section 230 of the Communications Decency Act to narrowly allow certain civil lawsuits and state criminal prosecutions. What about Alex Andrews' website? That's a little different than the Woodhull website, isn't it? She alleges that she has a website, RapeThatRescue.org. In her complaint and in the declaration that she submitted in support of Plaintiff's Motion for Plenary Injunction, she actually discusses their intent behind creating that website. That's at JA145-46. That's her declaration, Your Honor. And she alleges that she created a website so that people can provide information on which of them they can rely on and which of them they can avoid. That's, again – And that's – there's no argument that that could be understood to be having an intent to promote and facilitate prostitution? Again, Your Honor, I think providing harm reduction information to persons who are engaged in sex work is different in kind from promoting and facilitating any specific instance of prostitution or sex work. So your argument is really turning on the specific instance language? Again, Your Honor, the language, the prostitution of another person. Congress could have written the statute differently, but they wrote the prostitution of another person. And I think Plaintiff's distorts the statute beyond recognition in saying that it targets prostitution as a subject matter or as a general concept. I also think that Plaintiff's distorts the allegation – But at this stage, we have to – if we agree with you, we would have to say that the only way the statute could reasonably – the only way it could reasonably be read would be in connection with a specific act of prostitution. A specific instance – That the only reasonable way – that's your argument. It's the only reasonable way that the statute could be read. Your Honor, I think at this stage, this Court would have to decide that the arguable ways that the statute could be read do not apply to Plaintiff's conduct. So if there might be other ways that the statute could be read, maybe this isn't the only one. But certainly, I don't think that there's a reasonable reading of this statute, Your Honor, that applies to Plaintiff's conduct as they've alleged it in the complaint. And of course, Plaintiffs have to show a credible threat of prosecution to have standing at this stage. As this Court said in the Matthew Goldstein v. State Department case, in a pre-enforcement challenge, there must be some action by the Plaintiff that would trigger enforcement in the first place. And Plaintiffs have not alleged that here. Does the operator of the website need a specific intent with respect to prostitution of an identified victim? I don't know if it needs to be an identified victim, because I imagine a lot of this is anonymous, Your Honor. Right. But it does have to be an instance of prostitution, the prostitution of another person. What I'm getting at is if you say, right, the paradigmatic example that Congress was getting at seems to be like the operator of Backpage. Certainly. And they might not have any knowledge, much less specific intent, with regard to individual instances of prostitution. They're just designing the website to facilitate illegal activity. They might have intent about specific transactions, even if they don't know the identified victim. They have intent with regard to illegal transactions. Yes, Your Honor. But no intent or no knowledge with regard to individual transactions. I think that there could be inferences of individual transactions in that instance. Maybe. But I would note that they mentioned the prosecution of Backpage, and they implied that the government is arguing for a lower mens rea standard in that case. I guess what I'm suggesting is it's not entirely clear how much work the phrase prostitution of another person does insofar as it might suggest a very particularized focus on an identified victim. I think it's speaking of acts of prostitution, Your Honor. Again, not simply the subject matter of prostitution. And although, as Your Honor mentioned, there might be difficult cases on the margin, all this Court needs to conclude is this statute cannot be arguably read to apply to plaintiff's conduct here. And the point that I was just making quickly, Your Honor, is that Backpage, in fact, was prosecuted under the Travel Act before Section 2421A was enacted. And so I want to clear up perhaps any misconception about the arguments that appellants were making about mens rea standard there. As a matter of information, Backpage, did it only deal instance by instance? I'm not familiar, Your Honor. I know that there was a large Senate investigation against Backpage, and we cite that in our brief. And the Senate, of course, found in that investigation that Backpage was deliberately designing its website, deliberately operating it. To do what? To allow for prostitution to be advertised on its website or perhaps other sex trafficking offenses. And I haven't read probably as much as you, but I don't see any indication it was limited to specific instances of prostitution. The law or Backpage's conduct, Your Honor? Backpage. I think, Your Honor, that they were operating their website with the intent to allow for commercial sex to be advertised or sex trafficking itself. They were allowing – they were changing words that were, for example, in advertisements. Correct. Not as to a specific act. That's what I'm trying to get at. I think that suggests Congress had a broader intent. I think, Your Honor, there's still – it's speaking of instances of prostitution, identified instances of prostitution, not prostitution as a subject matter or as a concept, which again is plaintiff's argument here. There are all these things happening on this street at a certain date, but not one involving Mary, one involving Suzy, one involving – And I don't mean to suggest, Your Honor, that there needs – that its exact specifics involving individuals, merely that it's speaking of unlawful instances of prostitution and not prostitution as an abstract subject matter or concept. So, if it's saying, as to unlawful acts, we want to make it safer for these unlawful acts to occur. I don't think that that's a fair reading, Your Honor, because – Of what? Of the – excuse me. I think providing resources to make sex workers safer is not acting to intentionally promote or facilitate any unlawful instances of sex work occurring, Your Honor. But, I mean, we're back to Judge Griffith. That is the Department's interpretation, I gather. But is it the only plausible interpretation of the statute? And that's why I referenced Backpage. I think, Your Honor, Backpage only confirms what Congress was trying to do in this statute, and it wasn't to criminalize any type of speech about prostitution on the Internet, and that is how plaintiffs have characterized the statute here. As they've alleged their conduct, there is no credible threat of prosecution against them. For promoting or facilitating prostitution of another person. The prostitution of another person. The prostitution of another person. And why does that have to be limited to a single person? Not necessarily a single person, Your Honor, but, again, instances of prostitution and intentionality. So that's Backpage. And that's what the appellants are arguing, at least for standing, is a plausible interpretation. It's not so beyond the realm. Now, there's Senator Blumenthal's statement, but that's it. Your Honor, it's not just that. It's the language of the bill. Sorry, the text of the statute, the context, of course, confirms that. And, of course, no one has suggested, either before FOSTA or now, that it was intended at all to apply to harm reduction activities of the kind that plaintiffs allege here. And, of course, Section 2421A is similar to the Travel Act, which has been on the book since 1961. It's different. That law prohibits you. All the reasons set out in the brief. It says, Your Honor, promoting or facilitating the promotion of unlawful instances of prostitution. But it's surrounded by verbs, you know, et cetera. You know the arguments. Certainly, Your Honor, I know the arguments. But I think, Your Honor, if it could be said that promoting or facilitating the promotion of unlawful prostitution means this kind of harm reduction activity, then presumably that would also be unlawful under the Travel Act. But Andrew's website isn't just harm reduction activity. It's giving suggestions about how to use PayPal. What's the harm reduction in that? That is facilitating, it's helping a sex worker carry out their trade by facilitating payment through PayPal. Your Honor, I think if you look at the allegations that are in the complaint about that Ms. Andrews alleges of her intent for creating Rape Without Rescue and what that Rape Without Rescue does, it does not meet the intent bar, for one, Your Honor. And I don't think that it can plausibly be said to be promoting or facilitating unlawful instances of prostitution. I think it's different in kind, Your Honor. And I, again, I'm relying on the text of the bill itself. And, again, it can be. Perhaps it's different in kind. But at this stage of the litigation, the government has to show that the plaintiff's reading of it is totally unreasonable. There's no basis for it at all. I think that's a really heavy – it's supposed to be a really heavy burden on the government. We're talking about the First Amendment here, right? There's a heavy burden on the government here. And you have to persuade me, at least, that their reading is totally implausible. Your Honor, this Court's decision in American Library Association v. Barr, Matthew Goldstein v. the State Department, those were pre-enforcement cases in which this Court made clear that mere subjective chill is not sufficient. If there is no allegation that establishes a credible fear of prosecution, then they do not have standing to bring a pre-enforcement suit. It's a little bit broader than that, right? Because even if we accept your interpretation as binding on the federal government, this statute was designed to facilitate actions and civil litigation, right? So for standing purposes, we're talking about exposure to enforcement actions. And we need to consider state prosecutions and civil litigation, right? I don't think that FOSTA's amendments in that respect change the analysis, because FOSTA amended Section 230 of the Communications Decency Act to allow certain state criminal prosecutions and civil suits to the extent that they violate Section 1591, which is a pre-existing. They allow – there's a private civil cause of action, right? Section 1591. So any – so any putative victim can pursue a civil case resting on a broader interpretation of the statute? Your Honor, if Section 1591 is a pre-existing federal criminal prohibition on sex trafficking that prescribes knowingly performing certain activities if the – with – No, but 2241A has a private right of action associated with it. But, Your Honor, the reduction in Section 230 immunity is, I think, it's tied to Section 2421A. No, but I'm – I think I'm – unless I have it confused, I think I'm just talking about the new freestanding substantive criminal prohibition in 2241A. And it has a private right of action associated with it. Your Honor, it would have to be for – I think that one in particular, the private right of action, if you're referring to – I can – don't have the – I'll get it in a second. It's 2241 capital A little c. Any person injured by reason of a violation of 2241 capital A little b. Little b. Which is the new provision we've been primarily talking about. 2421A b is the aggravated violation prohibition in Section 2421A. Sure, but it has all the relevant – all the relevant language about prostitution of a person and promotion and the like. I think Section – I think the aggravated violation section, Your Honor, just again confirms that Section 2421A is talking about instances of prostitution and not merely prostitution as a concept of subject matter. I'm just going over the same arguments about prostitution of a person and facilitation. I apologize if I sound like a broken record, Your Honor. No, no, I know. It's just there's nothing – all I'm saying is there's nothing for purposes of this discussion, there are no relevant differences between the aggravator and the primary provision. In terms of the fact that Section 2421A b speaks of promoting or facilitating the prostitution of five or more persons, again, we're talking about identified instances of prostitution. And also, if it's in reckless disregard of the fact that it's sex trafficking in violation of Section 1591. And again, that's a preexisting prohibition on sex trafficking that prohibits knowingly performing certain actions, knowing that force, fraud or coercion were used to cause a person to engage in a sex act or the person was under the age of 18. And again, that's certainly identified instances of prostitution and not merely prostitution as a subject matter or things that could be hard – I mean, it's an or, right? So I can give you 1591 without losing this point. Well, I think, Your Honor, if plaintiffs are correct about the meaning of Section 2421A, then it's hard to see what the meaning of the aggravated violation is doing, because if you're simply speaking of prostitution generally, then you would – well, if you're speaking about prostitution generally and that Section 2421A could plausibly cover this kind of harm reduction activity, you would almost always presumably be speaking about more than five people. And so it's hard to see, again, what the aggravated violation provision would even be doing there. And I would also note that there's also the affirmative defense that's in Section 2421A as well, which of course speaks to if it's legal in the jurisdiction. Again, we're talking about particular acts of prostitution, transactions of prostitution. It's not simply this concept of prostitution that plaintiffs are suggesting. And to go back to your point about States and civil litigants, again, to the extent that FOSTA allows these lawsuits to proceed, it's only to the extent that they violate Section 2421A or Section 15981. And – Right. But at the standing stage, the relevant inquiry is not who's ultimately right. It's whether – whether potential defendants – defendants potentially in the crosshairs are going to be subjected to the hassles of defending criminal or civil enforcement actions. Well, Your Honor, first, I think there's no threat of that because, again, we don't think that these statutes can be reasonably read to apply to plaintiff's conduct. If someone brought a suit notwithstanding the text, it's hard to see how that would be traceable to the Federal Government and FOSTA here. But even setting all of that aside, Your Honor, again, FOSTA's been on the books for about a year now. Plaintiffs allege that so many people are chomping at the bit to indict them under this statute or bring civil suits against this statute, but they do not suggest that anyone's brought suit against advocacy organizations such as themselves. And that only demonstrates how this law cannot plausibly be read to apply to their conduct, Your Honor. We have amicus briefs on both sides, and I don't think that anyone who's – has threatened to bring a lawsuit against any kind of advocacy work that plaintiffs here are suggesting. And that's because the plain text of the statute does not support it. One different point. You talk about – can we talk about Kozik for a minute? Yes, Your Honor. His injury's a little bit different, right? He's alleging a classic pocketbook injury, harm to his business. And the issue is traceability and redressability in the context where the chain of His injury is different, Your Honor. And you say, well, we don't know – we have to predict what Craigslist is going to do when they're not before the court, and that's a hard thing to do. That's true as a general matter, but we pretty much do know what Craigslist did and why they did it, which is they constricted their website within a couple of days of the statute's enactment. They said they were doing it because the statute was enacted, and they said they wanted to resume the advertising platform if they were allowed to in the future. You're right. That seems like, on a motion to dismiss, that seems like a plausible showing of causation. Your Honor, they rely for these allegations on a statement from Craigslist. It appears in the Joint Appendix at 123. I don't think that it supports all of the inferences that Your Honor was just explaining. For one – Why not? So Craigslist explains – they mention that FOSTA was enacted, and they say, any service can be misused. They're taking down their personal services section. They said, we hope that we can bring it back someday. The implication from that is not that if FOSTA was enjoined, that Craigslist tomorrow is going to put back up a section of its website that it knew was being misused for either prostitution or sex trafficking, Your Honor. For one, even setting aside Craigslist's own business decisions in that regard, and they're not here to talk about what they would do. But two, that activity would be in violation of other Federal statutes, not simply FOSTA, Your Honor. For one, the Travel Act, as we've discussed, but also to the extent that it would be sex trafficking, Section 1591. But we know they were willing to provide an advertising platform that was helpful to CAUSIC facing all the pre-FOSTA statutes on the books, Travel Act and everything else. And we know that they stopped doing that in the wake of FOSTA because of FOSTA, at least on a motion to dismiss. That's the allegation. And it doesn't run into any Twombly-It-Ball problems that I can see. The Supreme Court in Defenders of Wildlife, Your Honor, made clear that when we're talking about the independent business decisions of a third party who's not before the court, standing is more difficult. It's more difficult. There's not a legal rule that it can't be shown. It's just there's a harder burden of proof. Right, Your Honor. And we're not saying that it can't be shown. But based on the allegations that are in the complaint, and specifically the statement from Craigslist that plaintiffs are hanging all of these allegations on, I don't think that plaintiffs have established plausibility in this context. I'll also note, as we mentioned in our brief, Craigslist has made business decisions both before FOSTA as well in 2010 to take down certain parts of its website. What more could or would they have to show? I mean, they have a statement from the third party. This is what we're doing. This is what we did, and this is why we did it. Your Honor, I think plaintiffs are merely speculating about redressability based on an independent actor that's not before the court. I don't think that they've met their burden. Who says we want to resume this service if we can. They said hopefully we can bring it back someday. I think the implication there is if the service is no longer misused, hopefully they could bring it back someday. Not if FOSTA is enjoying that they would put back up a section of its website that it knew was potentially in violation of the law. I'll also note that to the extent that this Court thinks that Mr. Kochek has alleged enough for standing, his theory of injury is quite different from the other plaintiffs. So I still think this Court should affirm the dismissal of the other plaintiffs, even assuming Mr. Kochek has standing here. But, of course, we don't think that's fair. How would that narrow the case? I mean, it wouldn't matter if they could all seek the same relief, but why would Kochek's theory support fewer arguments than the standing theories of the other plaintiffs? The other plaintiffs allege that FOSTA prescribes their protected speech conduct. Everyone agrees that... No, but on the merits, there's a First Amendment argument, there's a vagueness argument, there's an ex post facto argument. Is there some reason why the other plaintiffs could make more of those arguments than Kochek? Everyone agrees that Mr. Kochek's advertisements are not prescribed by FOSTA. His argument is that even though my advertisement is not prescribed by this statute, Craigslist has taken actions to take my advertisement down. That's quite different from the other plaintiffs who allege that FOSTA... Which is his injury that supports arguments to attack the statute on these various constitutional grounds. My point is merely, Your Honor, that that's quite different from the other plaintiffs who are alleging that FOSTA is written so broadly it encompasses their advocacy type activity, Your Honor. No one has suggested that Mr. Kochek's advertisements are at all prescribed by FOSTA. But, of course, we think that all of this is unnecessary, Your Honor, because Mr. Kochek... I see. Right. He couldn't – he might not be able to frame a challenge as applied to those specific acts, but to the extent – I assume they'll raise a facial challenge based on overbreath. I mean, they all could do that equally. But as Your Honor was suggesting, his injury is distinct based on the fact that my advertisements are not prescribed by FOSTA, but Craigslist, who again, not here, independent third party, has taken actions allegedly as a result. But all of that, I think, would be unnecessary, Your Honor, because, of course, we don't think that he's alleged enough facts for standing, as the other plaintiffs have done as well. So if there are no further questions, we ask that the district court be affirmed. Thank you. All right. Counsel for Appellants? Well, I think it makes sense to start with Eric Kochek. And I think you're correct, Your Honor, in your questions that having one party alone that establishes standing is enough for the pre-enforcement challenge to go forward. And here, the idea that the fact that a third party has to take an action is no barrier to standing. Otherwise, any time a bookstore is threatened with prosecution, the publishers of books would never have a standing to challenge that government action, because you couldn't guarantee that the bookstore would then restock the books afterwards. That's the theory of Bantam Books versus Sullivan. Right. There's still we still have a background rule that subjective chill is not enough, which is usually applied to the primary party in court, but presumably extends to the third party. So we still would have to assess whether Craigslist engaged in an action reasonably required under a plausible interpretation or whether they just unreasonably overreact. Right. But Craigslist, like the widespread reaction across the Internet, was to cut back on sites in reaction to FOSTA. And Craigslist explained that's the reason it was doing it and saying that it was hoping it could bring those categories of ads back in the future. And that was exactly the situation that... Assume we think that a non-sexual massage service like the one that Kazik says he operates, that advertising for that is not even remotely covered by the statute. The point is it doesn't matter whether or not his specific ads are remotely covered by the statute if the reaction of the platform is to be overly cautious because of the possibility that as a general proposition, broad categories of advertising could be targeted under the law. So his specific ads really aren't the issue. It's the reaction of the platform to having immunity stripped away and statutory terms that reach those categories and were the basis, by the way, for going after classified advertising platforms in the first place, saying that they had categories that the government didn't like. The point is the very case that the district court relies on, saying that having a third party make a decision cuts off standing, actually supports standing in this case. And that's this court's decision in Teton Historic Aviation Foundation v. Department of Defense. It's cited by Judge Leon below. But, in fact, that case found standing in a situation not dissimilar from this one where you had a challenge to a change in classifications for used military parts and foundations that restored historic aircraft, objective to the fact that that change in classification cut off their supply of Now, for them to have standing, you would have had not only the Department of Defense restoring the original classification, but also third party liquidators continue to stock those parts. And in that situation, this court found standing, saying that the department has sold parts like these in the past and has incentives to do so in the future. It is precisely the kind of situation we face here where Craigslist had these advertising categories in the past and it has the incentive to do so in the future and said that it wants to. With respect to Mr. Kozik specifically, he had been advertising on Craigslist for 12 years. The only changing variable was that FOSTA was adopted and Craigslist and many other websites cut back on what they could reasonably carry without fear of liability. And in cases like this, it's usually, when you're talking about speculative harm, the concern that you have a plaintiff with eggshell-thin sensibilities and you don't want to open the courts wide for that possibility. But here we don't have just an isolated reaction or a speculative reaction on behalf of a few parties in court. As soon as FOSTA was adopted, we saw widespread reactions all across the Internet. We had, and this is set forth in some detail in the amicus brief by Freedom Network, saying that this affected not just sex workers but sex therapists, massage therapists, harm reduction and advocacy groups. You had large and small platforms all reacting to this. Google changed its policies. Reddit changed its policies. And then you had other more targeted effects such as Desiree Alliance canceling its conference for harm reduction and sex workers. So this isn't just isolated to an aberrational reaction on the part of these appellants. These appellants happened to be simply the ones who were courageous enough to come forward and explain, through the declarations to the district court, what the effects had been on them. I realize I'm over my time, but if the Court's indulgence, I would just make one last point. And that goes to the whole question of whether or not the wording of the statute, or more specifically the 2421A section of the statute, which is not all of FOSTA, but whether or not the expression, the prostitution of another person, minimizes this in any way. It simply doesn't limit the scope of what it means to facilitate or to promote, whether or not you're talking about one person or many. It was sort of a telling admission by the government to say that she didn't know what work the aggravated offense of 2421A was doing, because if you've got a website that reaches one person, it's also going to reach five. So, you know, every offense under 2241A is arguably an aggravated offense. But just to the point. Ginsburg. Well, I thought she was actually using that to reinforce her point. Roberts. Well, I'm simply saying that if you read it like that, then the affirmative defense and the attempted narrowing of the statute essentially mean nothing. But if you took look at specifically whether or not narrowing it to a specific person narrows the statute, it simply doesn't. And again, I'll go back to the analysis of the Ninth Circuit in Sen. Smith, where that very argument was made. And the court said that implying a mens rea requirement into the statute and applying it only to speech of a particular person does not cure the statutes in permissible scope. Because, again, the other verbs in the statute apply a range of actions that do infringe on speech. Finally, the Justice Department's position as expressed here today is that the prosecution's back page confirms what Congress was trying to do when it adopted FOSTA. But if that's the case, you would think that Congress would have written a statute that prohibited classified advertising online or talked about commercial transactions or in some other way had narrowing language. That's not what we got with FOSTA. We got a broadly written statute, not limited to commercial transactions, not limited to advertising, that talks about any activity on an online publisher that can be seen as promoting or facilitating prostitution, as well as the other provisions of FOSTA, can be the subject of liability. And for that reason, at a minimum, these appellants have standing. All right. Thank you. We'll take the case under revising.
judges: Rogers, Griffith, Katsas